J-A12043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K.A.N., | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellee | |
| v. | |
| J.A.N., | |
| Appellant | No. 1786 MDA 2014 |

Appeal from the Order entered October 6, 2014,
in the Court of Common Pleas of Susquehanna County,
Civil Division, at No(s): 2014-751

BEFORE: BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY: ALLEN, J.                    **FILED SEPTEMBER 03, 2015**

J.A.N. ("Father") appeals from the custody order dated October 2, 2014, and entered on October 6, 2014, in which the trial court awarded K.A.N. ("Mother") primary physical custody of the parties' son, J.A.N. (born in July of 2008) ("Child"), awarded shared legal custody of Child to Mother and Father, and granted Mother's request for relocation. We affirm.

The parties were married in September of 2005. Mother and Father resided in Brackney, Pennsylvania, until their separation in January of 2014. On June 2, 2014, Mother filed a complaint for divorce against Father, and sought primary physical custody of Child. On June 27, 2014, Mother filed a petition for special relief, seeking custody of Child and permission to relocate. On July 1, 2014, the trial court granted temporary custody of Child to Mother, and partial custody to Father. On July 8, 2014, Father filed an

answer to Mother's complaint, a counterclaim for custody of Child, and an answer for petition for special relief. On July 14, 2014, the trial court granted Mother's petition for relocation to Bluemont, Virginia, pending an expedited hearing. The trial court further found that exigent circumstances existed for the temporary relocation, and granted Father periods of forty-eight hours partial custody and visitation every other weekend.

On August 27, 2014 and September 11, 2014, the trial court held hearings on the relocation petition. At the hearings, R.A., Child's maternal grandmother ("Maternal Grandmother"); C.L., Child's maternal aunt ("Maternal Aunt"); A.S., Mother's cousin; J.K., Father's friend; J.W., Father's friend; and D.R., Father's friend, all testified. Mother and Father also testified. In the order dated October 2, 2014, the trial court awarded shared legal custody to Mother and Father, and awarded primary physical custody of Child to Mother and partial physical custody of Child to Father. The trial court's order also granted Mother's petition to relocate.

On October 22, 2014, Father filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father raises the following issues for our review.

1. Whether the trial court abused its discretion and committed an error of law when it misapplied the child custody and relocation laws, reaching a manifestly unreasonable result that is not supported by competent evidence?

2. Whether the trial court abused its discretion and committed an error of law when it failed to first consider all [seventeen] child custody factors before deciding the issues of relocation?

3. Whether the trial court abused its discretion and committed an error of law in allowing Mother to relocate with [Child]?

4. Whether the trial court abused its discretion and committed an error of law when it failed to consider all of the evidence and contradictory testimony?

5. Whether the trial court abused its discretion and committed an error of law by failing to establish a substitute custody [schedule] that will adequately foster an ongoing relationship between [Child] and Father?

Father's Brief at 6.

On April 30, 2015, this Court remanded the case for the filing of a more comprehensive trial court opinion to include enumerated discussion of all ten factors of § 5337(h) and sixteen factors of § 5328(a). The trial court filed its opinion on May 13, 2015, and as the case is now before us following remand, we address the merits of Father's appeal.

Father argues that the trial court abused its discretion and committed an error of law in allowing Mother to relocate with Child. Father also argues that the trial court abused its discretion and committed an error of law when it failed to consider all of the evidence and contradictory testimony. Father contends that the trial court abused its discretion and committed an error of law by failing to establish a substitute custody [schedule] that will adequately foster an ongoing relationship between Child and Father.

Initially, we observe that because the custody trial in this matter was held on July 8, 2014, July 22, 2014, and August 11, 2014, the Child Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

- 4 -

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we explained:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**Id.** at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act, 23 Pa.C.S.A. § 5328(a), sets forth the best interest factors that the trial court must consider. **See E.D. v. M.P.**, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

- 5 -

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5328(a) of the Act provides as follows.

## § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.[1]

---

[1] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Although applicable at the time of the custody hearings in this matter, there was no

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

> **(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
>> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>>
>> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>>
>> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>>
>> (4) The child's preference, taking into consideration the age and maturity of the child.
>>
>> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>>
>> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

---

evidence that would have required the trial court's consideration of this factor.

- 8 -

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h). *See E.D.* 33 A.3d at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.")

In *A.V. v. S.T.*, 87 A.3d 818 (Pa. Super. 2014), this Court explained:

"*All* of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. *E.D.*, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. *Id.*

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all

- 9 -

that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-23.

Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" ***C.M.K. v. K.E.M.***, 45 A.3d 417, 421 (Pa. Super. 2012), *quoting* ***Baldwin v. Baldwin***, 710 A.2d 610, 614 (Pa. Super. 1998). As the party proposing the relocation, Mother had the burden of establishing that the relocation will best serve the interests of Child as shown under the factors set forth in section 5337(h). ***C.M.K.***, 45 A.3d at 427 n.1; 23 Pa.C.S.A. § 5337(i)(1). Each party had the burden of establishing the integrity of his or her motives in either seeking or opposing relocation. ***C.M.K.***, 45 A.3d at 427 n.1; 23 Pa.C.S.A. § 5337(i)(2).

With regard to the section 5328(a) factors, the trial court found the following.

1. We believe that Mother is more likely to encourage and permit frequent and continuing contact between [Child] and his father than Father would as to Mother for these purposes. We base this upon Mother's testimony offering a substantial amount of partial custody to Father and her testimony that sometimes she has to call 15-20 times to make contact with [Child]. We find she is more likely to obey the court orders.

2. There has been no abuse by either parent toward [Child]. However, there have been two incidents of physical abuse by Father against Mother, grabbing her forcefully by the arm once and pushing her out the door once. Even one of Father's witnesses testified as to his short temper exhibited on occasion.

Mother will better safeguard the [C]hild than Father, who keeps a loaded gun at his bed and assault weapons in open areas of his home. We note the testimony was that the [C]hild slept in the same room in which Father sleeps when in Father's physical custody.

Father also provided an all-terrain vehicle for the parties' six-year-old son at Father's residence.

2.1 No filings of [C]hild abuse are evidence in the matter's Record [sic].

3. By far, Mother was the primary caregiver of [Child]. She even quit her full-time employment to care more for him during the marital relationship. Father worked about eighty (80) hours per week at [], arriving at home between 6:30 P.M. and 9:00 P.M. on many occasions. He, on many occasions, dismissed Mother and [Child] when they came to the upstairs garage office, claiming [Child] was disrupting the office and/or the business employees.

Generally, Mother cooked for Father and [Child] and took [Child] to medical and dental appointments. No one disputes Mother was primarily the caretaker of [Child].

4. [Child] has a family life and a community life in the area of Brackney, [Pennsylvania]. Unfortunately, the marriage between Mother and Father became quite strained, apparently for some six (6) years Mother was unhappy in the marriage. She observed Father to be a controlling individual evidenced by maintaining his name only on the business and marital residence deed.

So, she made a decision to leave the marriage and to live in Virginia with her mother and step-father, who, although they encouraged her to try to work out the marriage, welcomed her and [Child] into their home. Mother and [Child] were not

- 11 -

strangers in that they visited Virginia every four to six weeks for the last six years.

Moreover, [Child], at six years of age, had only attended one year of daycare and one year of kindergarten. Hence, continuity as to his education was not relevant as where a child has attended a particular school system for several years[,] developing friends of long standing.

Family life, other than his being with a mother and a father who engaged in verbal fighting sometimes before him, was basically from Mother's side.

[Child] had community life and association, as no doubt he will have anywhere.

5. Extended family was through Mother's family. Father admitted to being in a dysfunctional family growing up. Until July, 2014, he had no relationship with his own mother for about seven years and still has no relationship with his brother, his brother's wife, and children. In fact, [Child] only found out about these children, his cousins, through conversations at school.

[Child] has a very close relationship with [M]aternal [G]randmother and step-grandfather with whom he and [M]other now reside in Virginia. [Child] apparently has a close relationship, as does [Mother], with an aunt in Virginia.

Mother's credible testimony was that contact with others of her extended family generally occurred when her mom and step-dad journeyed up from Virginia a couple of times per year to [Mother and Father's] residence.

6. There are no reported siblings of [Child]. Hence, this factor is not relevant.

7. The [C]hild, because of his age and otherwise, was not interviewed as to a preference. However, we find he has a much closer relationship with [M]other than [F]ather because he always spent considerably more time with her than with Father.

8. By a Skype encounter, Father intentionally or unintentionally, as a result of frustration, said some things in front of [Child] which did or could have had the effect of turning him against [M]other. He suggested and stated that everything was Mother's fault, that she was crazy, and that the "community" thought she was crazy. All of this was said with [Child] present.

9. By far, Mother, by the history of the parties' respective parenting, is more likely to maintain a loving, stable, consistent and nurturing relationship with [Child] for his emotional needs. Mother's principal focus was [Child]. Father's principal focus was to grow the business. He oft time dismissed [Mother] and [Child] from the office area when they came to visit. His interest in parenting was minimal until post-separation when he bought expensive things for [Child]- an ATV and swimming pool. And after the January separation, he began taking [Child] to visit lots of people in the community, but not his own relatives. His mother-in-law may have termed it succinctly by noting [Father] to be a "Disney Dad."

10. Essentially, Mother provided all daily care for [Child] during the marriage and we would expect that to continue. We do not find that Father would measurably downsize his business activities to parent [Child]. In fact, he had witnesses of the community who testified they would so assist in the daily care of [Child].

11. The parents of [Child] reside about [320] miles apart, about five plus hours driving time. Our order recognizes this and is so structured so that Father has plentiful partial custody.

12. Both parties have available childcare arrangements. Mother has her mother, her step-dad and an after-school program for a couple of hours Monday through Thursday.

Father has members of the local community who would be willing to assist him in childcare in his absence.

Both Father and Mother can provide proper care for [Child]. However, we have the same concerns as Mother about the safety of [Child] in Father's care as to the loaded firearm in

the bed, the unlocked-up firearms in closets, the six-year-old driving an ATV, and giving him a BB gun.

13.   The level of conflict between Mother and Father is very high, so much so that she testified that she wanted to get away from Father as far as possible.

Father has also testified that he would spend everything he has to have [Child] in his life.

Moreover, Father threatened Mother on one occasion that he would have her arrested for kidnapping.

14.   Father has had two arrests of driving under the influence charges- one resulting in a dismissal and one probably in a diversion program.   We cannot determine if there was a conviction as to either of these arrests of Father.

Father does not now and has not for about eleven years consumed alcoholic beverages.

Mother relates she may have a glass or two of wine nightly.

No testimony shows that either party and/or other person caring for [Child] consumes drugs and/or alcohol to any degree to impact negatively on [Child]'s daily care.

15.   Both parents are in good physical health and Mother's mom and step-dad are in good health.

Father can on occasion demonstrate a short temper, but no testimony indicates he has shown this against [Child].

16.   [Child] has moved to Bluemont, Virginia where he and Mother live with the maternal grandparents in a loving and caring, safe, environment.

By [M]other's report, he is adjusting well and thriving in one of the best school systems in the country- Loudoun County, Virginia School District.

[Child] is making friends in the Bluemont area.

Mother has her own employment and has her own opportunity for advancement.

[Mother] appears to be happy in Virginia living with her parents. She has self-esteem and is not under the untoward control of Father.

Trial Court Opinion, 5/13/15, at 1-6.

With respect to section 5328(a)(1), Father argues that the trial court did not make a finding regarding whether Father was likely to encourage and permit contact between Mother and Child if he was granted primary physical custody of Child. Father's Brief at 3. The trial court found that Mother calls Father ten to fifteen times to speak to Child when in Father's custody to "make contact with Child." Trial Court Opinion, 5/13/15, at 1. The trial court found that Mother is more likely to obey court orders and encourage continuing contact between Father and Child. *Id.* As the trial court based its conclusions upon competent evidence in the record, it did not abuse its discretion in concluding that Mother is more likely to encourage and permit frequent and continuing contact between Child and Father. Father's argument as to this factor is thus without merit. *See C.R.F., III*, 45 A.3d at 443.

With respect to section 5328(a)(3), Father argues that the trial court failed to give consideration to Father's role as the provider for the family during the marriage or Father's parental role after separation where Father devoted time to Child despite his work schedule. Father's Brief at 6. The trial court found that Father worked about eighty hours a week, and Father

- 15 -

dismissed Child when Child visited Father in the garage office. Trial Court Opinion, 5/13/15, at 2. The trial court found that Mother cooked for Father and Child, and Mother took Child to all of his medical and dental appointments. *Id.* The trial court also had concerns for Child's safety when in Father's care, including Father keeping his firearms in the home and allowing Child to be involved in inappropriate activities for his age. Trial Court Opinion, at 10/6/14, at 8. As noted above, we are bound by the trial court's factual findings that are supported by competent evidence in the record.

With regard to section 5328(a)(5), Father argues that the trial court erred in concluding that Mother has more available family members. Father's Brief at 8. The trial court found that Father admitted to having a dysfunctional family growing up and only recently started speaking to his mother. Trial Court Opinion, 5/13/15, at 3. The trial court further stated that Child has a strong relationship with Maternal Grandmother, Step Grandfather, and Child's maternal aunt. *Id.* The trial court found that Mother's testimony concerning Mother's extended family was credible. Again, as the trial court based its conclusions upon competent evidence in the record, it did not abuse its discretion in concluding that Child had more connection to Mother's extended family.

With regard to section 5328(a)(8), Father argues that there is no evidence that Father attempted to turn Child against Mother. Father's Brief

at 8-9.  Father admitted to stating in front of Child "everything was Mother's fault, she was crazy and the community thought she was crazy."  ***Id.***  The trial court found that, whether intentionally or unintentionally, Father made the statements in the presence of Child, which could have the effect of turning him against Mother.  Trial Court Opinion, 5/13/15, at 4.  We are bound by the trial court's factual findings that are supported by competent evidence in the record.

With regard to the relocation factors, the trial court found the following:

1. Most of [Child]'s interaction and daily contact for the majority of his life was with [Mother].  He also has significant contact, every four to six weeks for six years with [M]aternal [G]randmother and her husband in Virginia or in Brackney, PA when they came up to visit.

   [Child] had much less contact with Father, the non-relocating father.  It was not until the parties separated that Father began taking more of an interest in being a father to [Child].  Before separation, he many times dismissed [Child] from his presence claiming he was disturbing the office, business, or employees.

   [Child] has occasional contact before the parties' separation with other of Mother's relatives, and never with Father's relatives as he was estranged from his brother and his family and his own mother.

2. Relocation of [Child] and [M]other to Bluemont, Virginia to the grandparents' home is a positive impact.  He is out of a home where the parents fought verbally in his presence. [M]other is out of an unhappy six years of marriage to a very controlling husband.

   No negative or positive impact as to the [C]hild's physical needs can be ascertained.  He played tee-ball in the Brackney

- 17 -

area and he plays flag football in the Bluemont, [Virginia] area.

We find the relocation to be a positive thing for [Child] as he is flourishing in Virginia.

3. Arrangements for partial custody of [Child] by [F]ather are feasible despite the geographical distance between the households of about 320 miles. Our order provides for three non-consecutive weeks of partial custody for summer school vacation period. Moreover, we provided for daily telephone and/or electronic communications for both out-of-custody parents. Parties, by flex schedule of Father and by Mother being off on Fridays, can transport [Child] by meeting half-way at Lebanon, PA.

We can also provide that by agreement, parties can alter the exchange of physical custody times.

4. Child stated no preference, but the testimony demonstrates he would likely wish to be with [M]other living in Virginia and he has not verbalized wishing to return to Pennsylvania to live.

5. Although there have been a couple of bumps along the history of the post-separation of the parties, initiated by Father, there is no pattern of either parent thwarting [Child]'s relationship with a parent.

On the other hand, Mother has made significant efforts to promote [Child]'s relationship with [Father].

6. Mother's quality of life has been greatly enhanced by her and [Child]'s relocation to Bluemont, VA. She has a good job which pays well. She is not living under a controlling husband's household. She is not verbally fighting with [F]ather in [Child]'s presence

She looks in the future to obtain her own residence and advance her new employment.

7. [Child] no longer lives in a turbulent household, which can only benefit him emotionally. [M]other is happier and that

has a positive impact upon [Child]. He is with his loving grandmother and step-grandfather.

Moreover, [F]ather shows a decided new interest in spending time with [Child] as before when he was too busy growing his business to spend much time with [Child].

[Child] has a better educational opportunity in one of the five best school systems at Loudoun County School District than he would have had at Montrose Area School District.

8. We find that Mother's motivations in relocating were to escape what had become six years of an environment of an unhappy marriage as a result of a very controlling husband. She also seeks to remove [Child] from the fighting between her and Father. Also, she seeks to better herself, at nearly forty years of age to gain her own identity through a new job and opportunity. It goes almost without saying that by moving, she gained the daily support of her mother and step-father and in turn who also provided support and care for [Child].

We find Father at first primarily sought to maintain his control over Mother even offering to buy her a house and to keep her in the geographical area. Now, in addition, Father seeks not only to maintain control, but also to keep his son in his daily life.

9. We determine that Father, at minimum, continues to attempt to control Mother and she would be subject to emotional abuse from him if she and [Child] continued to reside in the same geographical area as Father.

Trial Court Opinion, 5/13/15, at 6-9.

Father argues that the trial court erred in permitting Mother to relocate with Child from Pennsylvania to Virginia. Father's Brief at 15. The trial court found that Child is "flourishing in Virginia, is in a great school system and is now being raised in a loving, caring, and peaceful home environment." Trial Court Opinion, 5/13/15, at 9. Furthermore, the trial court found that

- 19 -

relocation will enhance the quality of life for both Mother and Child. Trial Court Opinion, 10/6/14, at 8. Father's issue on appeal, in sum, seeks review of the trial court's findings of fact and credibility determinations. Our standard of review, however, does not permit this Court to re-find facts, re-weigh the evidence, or to impeach the credibility determinations of the trial court, absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443. Therefore, Father's argument is without merit.

After careful review of the record, we find that the trial court analyzed each factor regarding custody and relocation and found that, as discussed above, Mother is more likely to maintain a loving and stable relationship with Child; Mother attends to Child's daily physical, emotional, developmental, and education needs; Child is in a safe and loving environment and has adjusted well and is thriving in one of the best school system in the country; and Mother has her own employment and is not under Father's control. There was ample, competent evidence in the record upon which the trial court concluded that Child's best interest is in the primary care of Mother, with plentiful and partial custody awarded to Father, and that Child and Mother could relocate to Virginia with maternal grandparents. We find no basis upon which to disturb the trial court's order granting relocation and partial physical custody to Father in Pennsylvania. *See C.R.F.*, 45 A.3d at 443.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2015